Filed 2/11/15  Estate of Thomson CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| Estate of LINDA THOMSON, Deceased. | B253895 |
| RICHARD THOMSON, as Special Administrator, etc., | (Los Angeles County Super. Ct. No. KP013907) |
| Petitioner and Appellant, | |
| v. | |
| LORRAINE SHERZER, | |
| Objector and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Reva G. Goetz, Judge.  Affirmed.

Robert L. Kern and Russell A. Dalton, Jr., for Petitioner and Appellant.

Lorraine Sherzer, in pro. per., for Objector and Respondent.

\* \* \* \* \* \*

In this probate proceeding, petitioner Richard Thomson[1] appeals from the probate court's order denying his petition for the court to make certain determinations. We find no error and affirm.

## FACTS AND PROCEDURE

### 1. Background Proceedings

Decedent Linda Thomson was the mother of Cameron Thomson. Cameron and codefendants were charged in the killing of two teenagers in 2008, when Cameron was a minor. The parents of the deceased teenagers filed a civil suit naming Cameron and Linda as defendants, among others (the wrongful death action). The parents of the deceased teenagers are Lorraine Sherzer and Michael and Pamela Thompson (the wrongful death plaintiffs).[2] Against both Cameron and Linda, the complaint alleged wrongful death, negligence, and intentional infliction of emotional distress. As to Linda, the complaint alleged she had negligently supervised Cameron and was also vicariously liable for his willful acts. The complaint additionally alleged assault and battery against Cameron.

Linda tendered the defense of the wrongful death action to her homeowner's insurance carrier, USAA Casualty Insurance Company (USAA). When USAA refused to defend the wrongful death action, Linda filed a suit against USAA for a declaration that the insurer had a duty to defend and indemnify her (the insurance action). In 2010, USAA agreed to pay the wrongful death plaintiffs the policy limit of $100,000. In exchange, they agreed to release their claims against Linda arising from the deaths of their children and dismiss the wrongful death action against her with prejudice. Linda also agreed to dismiss the insurance action against USAA.

---

[1] The background of this case requires us to refer to several individuals who have the surname "Thomson." To avoid confusion, we will refer to them by their first names.

[2] Sherzer is the respondent in this appeal.

Linda died on August 4, 2010, after she agreed to the settlement but before she could sign the settlement agreements in the insurance action and the wrongful death action. Linda's counsel petitioned the probate court to appoint her father, Richard, special administrator of her estate for the limited purpose of signing the settlement agreements. The probate court granted the petition and issued letters of special administration that expired on February 9, 2011.

Linda's counsel wrote to the wrongful death plaintiffs and USAA to inform them of Linda's death. In pertinent part, he wrote: "First, because of Linda's death and the complexity of this case, the release language from the plaintiffs will have to include a release as to Linda's son, Cameron. . . . [¶] . . . [¶] Under the terms of the revised releases, Linda's estate, which includes Cameron, will forever release and discharge USAA Casualty, thus eliminating the need for Cameron's signature on anything. The plaintiffs would be discharging Linda's estate, which includes Cameron, which will again eliminate the need for Cameron to sign anything."

USAA responded that, as far as it was concerned, the release of all claims against USAA had to include Linda, "her estate, Cameron, and any other person or entity acting or purporting to act on her behalf."

The wrongful death plaintiffs' counsel responded as follows: "I understand that because of [Linda]'s death, [counsel] wishes to have the settlement agreements revised to include a release as to Cameron. [¶] I do not believe that [Linda]'s death has any affect on the necessary releases, and I believe the release presently includes a release of [Linda]'s heirs *arising from her own liability*. I do not see why Cameron should be released as part of the settlement agreement for *his own liability* and we are not prepared to release him as part of the agreement that we have already reached."

Despite this apparently unresolved disagreement over the scope of the release, Richard signed the settlement agreements in November 2010 as special administrator for Linda's estate. The settlement agreement in the wrongful death action stated the plaintiffs were releasing and forever discharging "Linda Thomson and USAA Casualty Insurance Company (including their respective heirs, assignees, representatives, co-

insureds, agents, attorneys, officers, directors, employees, parent companies, subsidiaries, affiliates, guardians, and any other person or entity acting by or through them)." The wrongful death settlement agreement identified only the wrongful death plaintiffs and Linda as parties to the agreement. Pursuant to Linda's motion, the court in the wrongful death action determined the parties entered into the settlement agreement in good faith. (Code Civ. Proc., § 877.6.) After that, the wrongful death plaintiffs filed a dismissal as to Linda only.

In November 2012, Cameron moved for summary judgment in the wrongful death action on the ground that the settlement agreement released all the claims against Linda *and* him. The wrongful death plaintiffs opposed the motion, arguing the release applied only to Linda, and Cameron's liability arose from his independent participation in the killings, not Linda's actions. The court denied Cameron's motion for summary judgment in January 2013.

## 2. Petition Giving Rise to This Appeal

In June 2013, Richard filed the petition now at issue in the instant probate proceeding. He styled the petition: "Petition [(1)] to terminate proceedings, [(2)] for approval of waiver of account, [(3)] *for a determination that issues raised by settlement agreements have been resolved*, [(4)] for a determination that claims filed are invalid, [(5)] for a determination that petitioner has no obligation of any kind to any party and [(6)] such other relief as the court may deem to be appropriate for petitioner and the heir-at-law of the decedent" (the petition). (Italics added.)

Richard's contentions on appeal relate to request No. 3 for a determination as to the settlement agreements. Specifically, the petition prayed "[f]or orders determining that the execution of the settlement agreements which [Richard] signed pursuant to the order of [the probate] court are enforceable according to the terms thereof, including but not limited to the discharge and release of the heirs-at-law of the decedent as specified in the terms of the agreement relating to the [wrongful death] action; or, alternatively, in the event that the terms of the agreement relating to the [wrongful death] action are not determined to be enforceable, that the Letters of Special Administration of [Richard] be

4

reinstated and the consideration ($100,000, together with interest at the legal rate) be ordered returned and paid forthwith." Richard wanted the probate court to determine the settlement agreement in the wrongful death action released Cameron because he was the heir and co-insured of Linda. In other words, he wanted the probate court to make the same determination the court in the wrongful death action had refused to make on Cameron's motion for summary judgment.

The wrongful death plaintiffs filed a response to the petition. They noted they were not parties to or claimants in the probate proceeding, but they nevertheless asked the court to deny the orders Richard requested regarding the settlement. They explained Cameron had already moved in the wrongful death action for the same determination Richard was seeking, and they sought judicial notice of the summary judgment pleadings and ruling.

The probates notes[3] for the hearing recommended in pertinent part as follows: "Recommend deny as to discharge & release of heirs - improper request - terms & effectiveness of settlement agreement separate from a report of acts of special administrator [¶] Recommend deny as to 'reinstate' letters of special administration - new petition for appointment required - letters expired 2/9/11."

After hearing oral argument from the wrongful death plaintiffs and Richard, the probate court took the petition under submission. It later issued a minute order stating the request for an order determining the meaning of the settlement agreement was "denied with prejudice." Richard filed a notice of appeal from the minute order.

---

[3] As explained in the California Practice Guide on probate: "[M]any probate departments have staff attorneys who review all probate pleadings before their respective hearing dates [citation]. The staff attorneys then issue 'calendar notes' (or 'probate notes') indicating whether the pleadings are 'in order' (e.g., 'recommended for approval' or 'RFA') or 'defective,' with the reasons usually given. These notes are usually available to counsel several days prior to the hearing (although precise availability varies from county to county)." (Ross & Cohen, Cal. Practice Guide: Probate (The Rutter Group 2014) ¶ 3:538, pp. 3-124.10 to 3-124.11 (rev. # 1, 2014).)

5

## DISCUSSION

On appeal, Richard invites us to interpret the settlement agreement in the wrongful death action and determine the agreement released the claims against Cameron as well as those against Linda. We decline the invitation. The probate court denied the request for such a determination. Richard completely fails to show the court erred in refusing to decide the issue.

We indulge all presumptions in favor of the probate court's correctness, and we presume it was correct based on any rationale supported by the record. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.) Richard has the burden of affirmatively demonstrating error. (*Ibid.*)

Richard offers no authority demonstrating the probate court must determine the meaning of the settlement agreement in the wrongful death action. Nor does he offer a good reason why the probate court should have done so, as opposed to the court where the wrongful death action is pending. That action is pending in the San Bernardino County Superior Court; the parties in that action have begun to litigate the issue in the summary judgment proceedings there; and, notably, the agreement itself provides that any action to enforce or interpret the agreement shall be brought in the San Bernardino County Superior Court. No doubt the court in the wrongful death action is far more familiar than the probate court with the parties to the agreement and the claims the agreement purports to settle. It was eminently sensible for the probate court to abstain from interfering and allow the San Bernardino court to determine the meaning of the settlement agreement, whether that be through further motion practice or at trial.

Richard argues the probate court accepted a stipulation from the parties that it could decide the issue. This occurred at the hearing on the petition. The wrongful death plaintiffs argued primarily that the probate court had no jurisdiction to make the requested determination because the issue had to do with claims against Cameron, not claims against Linda's estate. They further argued the court could nevertheless look at the documentary evidence submitted on the summary judgment motion in the wrongful death action and determine from that evidence that the settlement agreement did not

6

release the claims against Cameron.  Accordingly, they agreed "to submit the issue of to whom the settlement agreement applies" to the probate court.

Even if they stipulated the probate court could decide the issue, that does not mean the court was bound to do it, especially when common sense dictated otherwise.  The agreement settled causes of action in the wrongful death action.  That action is still pending.  Cameron is asserting a defense in that action based on the release in the settlement agreement.  The court in San Bernardino should ultimately determine the validity of the defense.

## DISPOSITION

The order is affirmed.  Respondent shall recover costs on appeal.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

7